# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF IOWA
# EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>vs.<br><br>LESA HOVDEN-LEE,<br><br>    Defendant. | No. CR03-2017<br><br>**REPORT AND RECOMMENDATION** |

_____

This matter comes before the court pursuant to movant Lesa Hovden-Lee's motion to vacate, set aside, or correct her sentence pursuant to 28 U.S.C. § 2255 (docket number 124). Briefs on the merits of this matter have been submitted. This matter was referred to the undersigned United States Magistrate Judge for issuance of a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). The undersigned recommends that the application for writ of habeas corpus be denied and this matter be dismissed.

## I. PROCEDURAL HISTORY

The indictment charged movant Lesa Hovden-Lee and two other individuals, Thomas Lammers and Scott Hovden, with four federal crimes. Ms. Hovden-Lee was named in Counts 2 and 3. Count 2 charged Ms. Hovden-Lee, Mr. Lammers, and Mr. Hovden with knowingly and intentionally manufacturing, attempting to manufacture, and aiding and abetting the manufacture and attempted manufacture of five grams or more of pure/actual methamphetamine, a Schedule II controlled substance, within one thousand feet of an elementary school. Count 3 charged Ms. Hovden-Lee with knowingly opening, managing, controlling, and making available for use, with or without compensation, and aiding and abetting the opening, maintaining, managing, controlling, and making available

1

of, a building, room, or enclosure, as the owner of the home at 1120 Skadeland Street, Ridgeway, Iowa, for the purposes of unlawfully manufacturing, storing, distributing, and using the controlled substance outlined in Count 2.

On August 15, 2003, Ms. Hovden-Lee gave, through counsel, notice of her intent to plead guilty to Counts 2 and 3 of the indictment. On August 28, 2003, this court entered a Report and Recommendation that Ms. Hovden-Lee's guilty plea be accepted. The guilty plea was accepted by the United States District Court for the Northern District of Iowa on September 15, 2003. On December 23, 2003, the District Court sentenced Ms. Hovden-Lee to concurrent sixty-three month terms of imprisonment on each of the two counts. Ms. Hovden-Lee's sentence includes eight years of supervised release on Count 2 and three years of supervised release on Count 3, which will run concurrently, and a special assessment of $200. Ms. Hovden-Lee has not filed a direct appeal in this matter.

The instant motion was filed by Ms. Hovden-Lee, pro se, on August 23, 2004. In her 28 U.S.C. § 2255 motion, Ms. Hovden-Lee raises three arguments challenging her conviction and sentence. Specifically, Ms. Hovden-Lee asserts that: (1) the assistance of her counsel, John Hammond, was deficient because Mr. Hammond failed to file a motion to suppress evidence that was seized at her home; (2) the search of her home violated her rights under the Fourth Amendment of the United States Constitution; and (3) the District Court violated her rights under the Sixth Amendment of the United States Constitution by not allowing her to confront a witness whose testimony was used in the calculation of her sentence.

The major premise behind Ms. Hovden-Lee's argument stems from the fact her court-appointed counsel failed to file a timely motion to suppress evidence obtained during what she asserts was an illegal, unwarranted search of her home during the night of April 3 and early morning of April 4, 2003. Ms. Hovden-Lee asserts that this failure constitutes ineffective assistance of counsel according to the United State Supreme Court's

pronouncement in Strickland v. Washington, 446 U.S. 668 (1984), which was reformulated in Lockhart v. Fretwell, 506 U.S. 364 (1993). Ms. Hovden-Lee also notes that her counsel filed a motion to suppress evidence when her case was initially brought in state court. Ms. Hovden-Lee's last claim in her section 2255 motion asserts that the District Court, during sentencing, did not allow her to confront a witness whose testimony was relied upon to calculate her sentence. Ms. Hovden-Lee relies upon the United States Supreme Court's recent decision in Crawford v. Washington, 541 U.S. 36 (2004), to assert that Crawford mandates that the Sixth Amendment right to confront witnesses applies to post-trial proceedings.

On January 20, 2005, the District Court conducted an initial review of Ms. Hovden-Lee's motion and ordered the government to plead or move by March 14, 2005. Ms. Hovden-Lee was required to respond to the reply by April 4, 2005. On January 31, 2005, Ms. Hovden-Lee filed a supplemental 28 U.S.C. § 2255 motion as a result of the United States Supreme Court's recent decision in United States v. Booker, 125 S. Ct. 738 (2005). In her supplemental motion, Ms. Hovden-Lee argues that Booker, in addition to Blakely v. Washington, 124 S. Ct. 2531 (2004), and United States v. Fanfan, 125 S. Ct. 738 (2005) (tried concurrently with Booker), invalidates the sentencing guidelines under which she was sentenced and that the proper standard of review for the sentencing enhancements invoked by the District Court is reasonable doubt before a jury, not preponderance of evidence before a judge as a trier of fact.

The government resisted Ms. Hovden-Lee's section 2255 motion on March 17, 2005. In its resistance, the government asserts that: (1) Ms. Hovden-Lee's claims of ineffective assistance of counsel do not rise to the level necessary to warrant relief under section 2255; (2) the search of Ms. Hovden-Lee's residence was not in violation of her rights under the Fourth Amendment and thus any motion to suppress filed on Ms. Hovden-Lee's behalf by Mr. Hammond would have lacked merit; and (3) Ms. Hovden-Lee's Sixth Amendment confrontation rights were not violated when the District Court relied upon

3

undisputed portions of the PSIR in calculating Ms. Hovden-Lee's sentence. The government relies upon the same standard in Lockhart, 506 U.S. at 364, that Ms. Hovden-Lee relies upon, but asserts that she does not meet the requisite threshold to prove ineffective assistance of counsel. Furthermore, the government notes that even if Ms. Hovden-Lee's counsel had filed a motion to suppress evidence obtained during the search of her residence, it would have lacked merit because the initial entry of law enforcement officials into Ms. Hovden-Lee's residence was lawful, consent was given to search the residence, and the presence and smell of illegal substances entitled law enforcement officials to secure the residence and obtain a warrant. The government also states that even if the initial entry was unlawful, law enforcement officials acted in good faith, further negating the merit of a motion to suppress.

The case was referred to the undersigned United States Magistrate Judge for a report and recommendation on April 29, 2005.

## II. CONCLUSIONS OF LAW

### A. Standard Under 28 U.S.C. § 2255

Title 28 U.S.C. § 2255 states in pertinent part:

> A prisoner under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence.

28 U.S.C. § 2255. Section 2255 is the statutory analogue of habeas corpus for persons in federal custody. Poor Thunder v. United States, 810 F.2d 817, 821 (8th Cir. 1987). "Like habeas itself, Section 2255 is not the equivalent of a direct appeal. There are many claims of error sufficiently grave and prejudicial to cause a reversal of conviction on direct

appeal, but yet not fundamental enough to support a collateral attack" under section 2255. Id. at 821. Consequently, relief under section 2255 is reserved solely for "transgressions of constitutional rights and for a narrow range of injuries that could not have been raised on direct appeal and, if [left] uncorrected, would result in a complete miscarriage of justice." United States v. Apfel, 97 F.3d 1074, 1076 (8th Cir. 1996) (citing Poor Thunder, 810 F.2d at 821).

Ordinarily, the failure of a section 2255 movant to raise an issue on direct appeal acts to procedurally bar him or her from raising that issue for the first time in a motion pursuant to section 2255.[1] Matthews v. United States, 114 F.3d 112, 113 (8th Cir. 1997). More specifically, as a result of a section 2255 movant's failure to raise an issue on appeal, the Circuit Court "cannot review his claims on their merits unless [the movant] is able to demonstrate either [1] cause for his default and actual prejudice, or [2] that the failure to consider his claims would result in a fundamental miscarriage of justice." McCall v. Benson, 114 F.3d 754, 758 (8th Cir. 1997) (citing Cole v. Thompson, 501 U.S. 722, 750 (1991)). The requirement of cause and prejudice means that a section 2255 movant "may not raise constitutional issues for the first time on collateral review without establishing both cause for the procedural default and actual prejudice resulting from the error." Apfel, 97 F.3d at 1076 (citing United States v. Frady, 456 U.S. 152, 167–68 (1982)). The "fundamental miscarriage of justice" exception to procedural default is "only available to a [movant] who demonstrates 'that a constitutional violation has probably resulted in the conviction of one who is actually innocent.'" McCall, 114 F.3d at 758. The rule of procedural default recognizes that the significant interest of finality in criminal cases retains strength only if the direct appeal remains the exclusive route for complaining of

---

[1] The rule of procedural default applies with equal force to an adjudication of guilt based on a defendant's plea of guilty as it does to a court or jury conviction. See Reid v. United States, 976 F.2d 446, 448 (8th Cir. 1992) (applying the rule of procedural default after the defendant's knowing and voluntary plea of guilty).

5

errors that demonstrate neither "a fundamental defect which inherently results in a complete miscarriage of justice, nor an omission inconsistent with the rudimentary demands of fair procedure." Id. at 821–22 (citing Johnson v. United States, 805 F.2d 1284, 1287 (7th Cir. 1986) (quoting Hill v. United States, 368 U.S. 424, 428 (1962)).

Once a court has decided the merits of all of the movant's claims which are properly before it, and has further determined whether the remaining claims may be excused from procedural default based on cause and prejudice, the court may analyze whether based upon a claim of actual innocence under the fundamental miscarriage of justice exception, the movant can avoid procedural default. See Dretke v. Haley, 541 U.S. 386 (2004). The actual innocence exception to procedural default "applies only when a [movant] shows by clear and convincing evidence that, but for the alleged constitutional error, no reasonable juror would have found the petitioner guilty." Anderson v. United States, 25 F.3d 704, 706–07 (8th Cir. 1994). Furthermore, "[t]he exception only applies to claims of factual innocence as opposed to legal innocence." Id. at 707. Specifically, a movant claiming actual innocence must show: (1) that his allegations of constitutional error are supported by new reliable evidence that was not presented at trial; and (2) that it is more likely than not that no reasonable juror would have convicted him in light of the new evidence. Weeks v. Bowersox, 119 F.3d 1342, 1351 (8th Cir. 1997). The fundamental miscarriage of justice exception is to remain rare and only be applied in the extraordinary case, reserved solely for those who are "truly deserving." Id. at 1351 (citing Schlup v. Delo, 513 U.S. 298, 321–22 (1995)). Accordingly, the actual innocence exception mandates "review of procedurally barred, abusive, or successive claims only in the narrowest type of case—when a fundamental miscarriage of justice would otherwise result." Id. (citing Bowman v. Gammon, 85 F.3d 1339, 1346 (8th Cir. 1996)).

## B. Standard Regarding Ineffective Assistance of Counsel

The Sixth Amendment right to counsel exists "in order to protect the fundamental right to a fair trial." Strickland, 466 U.S. at 684.

> [T]he right to effective assistance of counsel is recognized not for its own sake, but because of the effect it has on the ability of the accused to receive a fair trial. Absent some effect of challenged conduct on the reliability of the trial process, the Sixth Amendment guarantee is generally not implicated.

Lockhart, 506 U.S. at 364 (quoting United States v. Cronic, 466 U.S. 648, 658 (1984)). A criminal defendant is also entitled to effective assistance of counsel on a first appeal. Rogers v. United States, 1 F.3d 697, 700 (8th Cir. 1993); Estes v. United States, 883 F.2d 645, 648 (8th Cir. 1989).

Absent unusual circumstances, a section 2255 movant's demonstration of ineffective assistance of counsel satisfies the cause and prejudice standard of procedural default. Apfel, 97 F.3d at 1076. However, in order to successfully demonstrate ineffective assistance of counsel within the context of section 2255, the movant faces a heavy burden. See id. at 1076. In the context of a motion under section 2255, a claim of ineffective assistance of counsel is to be analyzed under the two-part test set forth in Strickland v. Washington. The United States Supreme Court reformulated the Strickland test for constitutionally ineffective assistance of counsel in Lockhart v. Fretwell. The Eighth Circuit's application of this test states:

> Counsel is constitutionally ineffective under Fretwell when: (1) counsel's representation falls below an objective standard of reasonableness; and (2) the errors are so prejudicial that the adversarial balance between defense and prosecution is upset, and the verdict is rendered suspect.

English v. United States, 998 F.2d 609, 613 (8th Cir. 1993) (citing Lockhart, 506 U.S. at 369–70). Review of trial counsel's performance is deferential and the presumption is that trial counsel was competent and effective. Strickland, 466 U.S. at 689; Smith v. Lockhart, 921 F.2d 154, 156 (8th Cir. 1990). Reasonable trial strategy cannot rise to the

7

level of ineffective assistance of counsel. Id. (citing Stacey v. Solem, 801 F.2d 1048, 1051 (8th Cir. 1986)). Counsel's strategic decisions "made after a thorough investigation of law and facts . . . are virtually unchallengeable," Strickland, 466 U.S. at 690, even if those strategic decisions prove unwise. Wing v. Sargent, 940 F.2d 379, 381 (8th Cir. 1988), cert. denied, 489 U.S. 1088 (1989). Representation is an art, and an act or omission that is unprofessional in one case may be sound or even brilliant in another. Strickland, 466 U.S. at 693.

If a section 2255 movant fails to demonstrate ineffective assistance of counsel as cause for the procedural default and prejudice attributable thereto, he may not obtain review of his defaulted claim. See Wainright v. Sykes, 433 U.S. 72 (1977). In the context of ineffective assistance of counsel, "cause" for procedural default must ordinarily be demonstrated by showing that some objective factor external to the defense impeded counsel's efforts to comply with the applicable procedural rule or standard of conduct. See Smith, 882 F.2d at 333 (citing Murray v. Carrier, 477 U.S. 478, 488 (1986)). "When counsel's conduct has impeded the [movant's] effort to bring a claim," such ineffective assistance of counsel constitutes "cause" for purposes of avoiding procedural default. See id.

In addition to establishing "cause," a section 2255 movant must "shoulder the burden of showing, not merely that errors at his trial created a possibility of prejudice but that they worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." United States v. Frady, 456 U.S. 152, 170 (1982). Where conduct has not prejudiced the movant, the court need not address the reasonableness of that conduct. Id. at 691; United States v. Williams, 994 F.2d 1287, 1291 (8th Cir. 1993). To determine whether there is prejudice, the court examines whether the result has been rendered "unreliable or fundamentally unfair" as a result of counsel's performance. Lockhart, 506 U.S. at 364; West v. United States, 994 F.2d 510, 513 (8th Cir. 1993). Unreliability or unfairness does not result if the ineffectiveness of

8

counsel does not deprive the defendant of any substantive or procedural right to which the law entitles him. Lockhart, 506 U.S. at 372, quoted in West, 994 F.2d at 513. Prejudice does not exist unless "there is a reasonable probability that, but for counsel's . . . errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694, quoted in Williams, 994 F.2d at 1291.

### C. Ms. Hovden-Lee's Claims Under 28 U.S.C. § 2255

1. Claim (1): Ineffective Assistance of Counsel; Claim (2): Illegality of Search

The first claim Ms. Hovden-Lee sets forth in her pro se brief is that her counsel was ineffective due to his failure to file a motion to suppress evidence obtained during a search of her residence. The success of this claim mandates that Ms. Hovden-Lee's assistance of counsel fell below an objective standard of reasonableness and that the resulting "errors [were] so prejudicial" as to create doubt as to the validity of the adversarial process under which Ms. Hovden-Lee pled guilty. See English, 998 F.2d at 613 (citing Lockhart, 506 U.S. at 369–70).

Ms. Hovden-Lee's residence at 1120 Skadeland Street in Ridgeway, Iowa, was under surveillance by local law enforcement officials on April 3, 2003. Law enforcement officials had confirmed that there were arrest warrants outstanding for Tommy Lammers and Scott Hovden and had reason to believe that Mr. Lammers and Mr. Hovden were at Ms. Hovden-Lee's residence. Upon observing the vehicles of both Mr. Lammers and Mr. Hovden at Ms. Hovden-Lee's residence, and observing Mr. Lammers outside of the residence, law enforcement officials approached the residence. After failing to contact the individuals by telephone, law enforcement officials began knocking on both the front and back doors of the residence. After knocking for several minutes, Scott Hovden answered the front door, identified himself, was advised of the warrant for his arrest, and placed under arrest. Mr. Hovden was then asked if Mr. Lammers was in the residence, to which

he replied "he might be." The defendant was also present. She was then asked whether Mr. Lammers was in the residence and confirmed he was. Mr. Lammers was found in the basement of the residence and was arrested.

As law enforcement officials approached the residence, they noticed a strong chemical odor emanating from the residence and that the windows of the residence were covered; a common practice in structures used to manufacture illegal substances. Upon arresting Mr. Lammers in the basement of the residence, law enforcement officials observed numerous materials that appeared to facilitate the making of methamphetamine. These materials included a pan with white residue, tin foil with brown residue (consistent with methamphetamine), pills in a glass jar, and muriatic acid. After noticing the materials, law enforcement officials evacuated Mr. Lammers, Mr. Hovden, Ms. Hovden-Lee, and Ms. Hovden-Lee's teenage son and left the residence. Law enforcement officials subsequently requested and obtained a search warrant for the residence pursuant to their observations of the aforementioned materials. The search warrant was executed and materials capable of producing methamphetamine were found.

Ms. Hovden-Lee's claim regarding the legality of the evidence obtained during the search does not question the validity of the search warrant, only the evidence observed that allowed the issuance of the warrant. Ms. Hovden-Lee claims her counsel was deficient because he failed to file a motion to suppress this evidence. The law does not support Ms. Hovden-Lee's contentions.

The Eighth Circuit has recently held that explicit, verbal consent to enter/search is not necessary and that "'a person can render a search legal by behaving in a way that would cause a reasonable person to believe that he or she has knowingly or voluntarily consented, whether or not the person actually intends to consent.'" United States v. Lopez-Rodriguez, 396 F.3d 956, 959 (8th Cir. 2005). The Eighth Circuit held that by allowing law enforcement officials to enter and never asking them to leave or stop searching, a person has thereby expressed what a reasonable person would believe is

10

consent. See id. The United States Supreme Court has addressed this issue, stating that although "police officers do not need a search warrant to enter" a residence to execute an arrest warrant, Payton v. New York, 445 U.S. 573 (1980), cited in United States v. Boyd, 180 F.3d 967, 977 (1999), a search warrant is required if the person subject to the execution of the arrest warrant is merely a third party who does not live at the residence. Id. (citing Steagald v. United States, 451 U.S. 204, 215–16 (1981)). However, the Steagald requirement does not apply "if the suspect is a co-resident . . . , [then] Payton allows both [the] arrest of the subject of the arrest warrant and [the] use of evidence found against" him or her. Id. (quoting United States v. Risse, 83 F.3d 212, 216 (8th Cir. 1996)). Furthermore, the presence of exigent circumstances or consent negate the need for a search warrant under Steagald. Id. (citing Steagald, 451 U.S. at 215–16).

In its brief, the government undertakes a lengthy discussion on whether Mr. Lammers or Mr. Hovden were residents of the 1120 Skadeland Street residence. In Mr. Hovden's case, the fact that he answered the door, was made aware of the arrest warrant, and arrested without law enforcement entering the residence negate the need for this discussion. United States Supreme Court precedent regarding the public nature of entry ways and the lack of Fourth Amendment privacy rights in doorways is clear. Entry ways are not private places, are not subject to Fourth Amendment privacy rights, and law enforcement officials are free to execute arrest warrants when a subject answers a door, regardless of whether they live at the residence. United States v. Sawyer, 427 U.S. 38, 42 (1976) (quoting Katz v. United States, 389 U.S. 347, 351 (1967)). Even if Mr. Hovden had answered the door and then closed it upon seeing law enforcement, law enforcement would have had clear authority to pursue him into the residence to arrest him, regardless of whether the home was his place of residence. Id.

Likewise, the statements of Mr. Hovden and Ms. Hovden-Lee regarding Mr. Lammers's presence in the residence are dispositive. In its pronouncement in United States v. Boyd, 180 F.3d at 978, the Eighth Circuit held that it was reasonable for law

11

enforcement officials to believe that they had consent to enter a residence after they asked about the whereabouts of an individual subject to an arrest warrant and were told, "[h]e's up in his room." It is a reasonable belief standard that governs these determinations. Id. at 977; Risse, 83 U.S. at 216. Mr. Hovden's statement that Mr. Lammers "might be" in the residence, combined with Ms. Hovden-Lee's pointing towards the rear of the residence when asked about Mr. Lammers's whereabouts, and the failure of either person to protest the entrance of law enforcement, provided sufficient basis for law enforcement officials to reasonably believe they had consent to enter the residence. This satisfies the threshold for consent set by the Eighth Circuit.

Warrantless searches are typically not allowed unless both probable cause and exigent circumstances are present. United States v. Tobin, 923 F.2d 1506, 1510 (11th Cir. 1991). The threshold for sufficient probable cause is whether "'a reasonably cautious person'" believes that evidence of a crime will result from a search. Id. (quoting United States v. Burgos, 720 F.2d 1520, 1525 (11th Cir. 1983)). Exigent circumstances are present "when there is a danger that the evidence will be destroyed or removed." Id. Furthermore, the Eighth Circuit has held that exigent circumstances are present "where law enforcement officers have a 'legitimate concern for the safety of themselves or others.'" United States v. Kuenstler, 325 F.3d 1015, 1021 (8th Cir. 2003). The Eighth Circuit has directly applied this standard to places of suspected manufacture of methamphetamine because of the "'volatile nature of such labs.'" United States v. Lloyd, 396 F.3d 948, 954 (8th Cir. 2005) (quoting Kleinholz v. United States, 339 F.3d 674, 677 (8th Cir. 2003)). Even if probable cause was somehow lacking, the United States Supreme Court has held that an arrest warrant, such as those executed against Mr. Lammers and Mr. Hovden, "may serve as a pretext for entering a home in which the police have a suspicion, but not probable cause to believe, that illegal activity is taking place." Steagald, 451 U.S. at 215.

The evidence law enforcement officials observed upon executing the arrest warrants for Mr. Lammers and Mr. Hovden was obtained legally. The unique nature of the manufacture of methamphetamine allows a lower threshold for exigent circumstances that was easily met with the chemical odors emanating from the residence, covered windows, and methamphetamine manufacturing materials found at the place of Mr. Lammers's arrest. The smell of methamphetamine-related chemicals, combined with the ability of the law enforcement officials to enter the residence to execute valid arrest warrants after Mr. Hovden voluntarily opened the front door, the fact that Ms. Hovden-Lee admitted Mr. Lammers was in the residence, and the failure of Ms. Hovden-Lee or Mr. Hovden to protest the entrance of law enforcement officials into the residence provided the opportunity to lawfully observe illegal activity and to formulate probable cause to search.

Furthermore, the police observed clearly incriminating matters in plain view at a place where they were lawfully present. Instead of seizing the items, the police evacuated the residence and controlled it until a search warrant could be obtained. This is evidence of their good faith. See Lloyd, 396 F.3d at 954.

The decision of Mr. Hammond, Ms. Hovden-Lee's counsel, to not file a motion to suppress the evidence obtained during the search of her residence is a strategic decision made by her counsel in light of the probable success of the motion. As distilled through the applicable standards above, a motion to suppress the evidence obtained during the search would have lacked merit and had little or no probability of success. At best, the issue would have become a credibility contest between Ms. Hovden-Lee and law enforcement. This is a contest that an attorney for Ms. Hovden-Lee could reasonably conclude was destined to lose and one Mr. Hammond was justified in not filing. Even if this decision where thought unwise, which this court does not think, an unwise decision by counsel does not render assistance of counsel ineffective. Wing, 940 F.2d at 381. Thus, Mr. Hammond's decision on behalf of Ms. Hovden-Lee to not file a meritless suppression motion does not fall below the requisite objective standard of reasonableness.

### 2. Claim (3): Violation of Sixth Amendment Right to Confront Witnesses

Ms. Hovden-Lee's remaining claim stems from her assertion that the sentencing court's reliance on the testimony of a witness who was not present for cross-examination was a violation of her Sixth Amendment right to confront witnesses as discussed in Crawford v. Washington. In computing Ms. Hovden-Lee's sixty-three month sentence, the District Court relied upon the Presentence Report (PSIR). At sentencing, Ms. Hovden-Lee raised no objections to the PSIR and the information it contained. Paragraphs 15 and 16 of the PSIR state that on January 16, 2003, approximately four months prior to the search of Ms. Hovden-Lee's residence, an informant provided information implicating Ms. Hovden-Lee and Mr. Hovden in the manufacture of methamphetamine on five occasions since Thanksgiving of 2002, including one on January 14, 2003. Law enforcement officials then executed a search warrant at Scott Hovden's residence at 2826 250th Street, Ridgeway, Iowa, and found materials sufficient to produce seven to nine grams of pure/actual methamphetamine. Seven grams were attributed to Ms. Hovden-Lee in the PSIR and used in the calculation of Ms. Hovden-Lee's sentence. The informant who implicated Ms. Hovden-Lee was not present during Ms. Hovden-Lee's sentencing hearing.

Ms. Hovden-Lee rests her Sixth Amendment challenge on the United States Supreme Court's recent pronouncement in Crawford. The Crawford decision stated that Sixth Amendment confrontation protections apply not only to in-court testimony, but to out-of-court statements introduced during litigation. Crawford, 541 U.S. at 50. However, Crawford's applicability to post-trial proceedings was not adressed by the Court. See generally id. The Eighth Circuit has stated that Crawford confrontation protections do not apply to post-trial proceedings regarding parole revocation hearings. United States v. Martin, 382 F.3d 840, 844 (8th Cir. 2004). Although the Eighth Circuit has not directly addressed whether Crawford protections apply to sentencing proceedings, the Fourth and Fifth Circuits have, stating that "the right of confrontation does not extend to sentencing

proceedings." United States v. James, No. 03-4950, 2004 WL 2857574, at *3 (4th Cir. 2004). Likewise, the Fifth Circuit has stated that there was "'no Confrontation Clause right at sentencing.'" United States v. Leatch, No. 04-10107, 2004 WL 2489166, at *1 (5th Cir. 2004) (quoting United States v. Navarro, 169 F.3d 228, 236 (5th Cir. 1999)).

Even if the Eighth Circuit or Supreme Court were to hold that Crawford protections applied to sentencing proceedings, Ms. Hovden-Lee's failure to raise any objections to the information contained in her PSIR prior to and during her sentencing hearing before the District Court render the issue moot. The Eighth Circuit has held that a defendant's failure to object to information contained in a presentence report is tantamount to an admission that the information contained in the report is true. United States v. Yahnke, 395 F.3d 823, 826 (8th Cir. 2005). Thus, Ms. Hovden-Lee's failure to raise any objections to the information in the PSIR forecloses her ability to now attack the information contained in paragraphs 15 and 16. She does not attempt to show cause or prejudice for this procedural default.

Regardless of the above mentioned points, Ms. Hovden-Lee's Sixth Amendment challenge is meritless because the sentence imposed by the District Court is clearly within the range that would be applicable even if the defendant's argument was accepted and she was not charged with responsibility for the additional seven grams of methamphetamine. The sentencing range provided in Ms. Hovden-Lee's PSIR that was used by the District Court in computing her sentence was from sixty-three to seventy-eight months. Her base offense level was 28, minus three levels for acceptance, plus one level for presence within a school zone, gave an adjusted offense level of 26. Had the PSIR not contained paragraphs 15 and 16 pertaining to the seven grams of methamphetamine found pursuant to the January 17 and 18, 2003 search, Ms. Hovden-Lee's adjusted offense level would have been 24 and the appropriate sentencing range would have been from fifty-one to sixty-three months. However, Ms. Hovden-Lee was subject to a five year mandatory minimum, thus making the latter applicable range sixty to sixty-three months. Thus,

regardless of which range was used by the District Court, Ms. Hovden-Lee's sentence was appropriate. The Eighth Circuit has addressed an analogous issue, holding that any challenge to sentencing is moot where the sentence given was appropriate under all possible sentence ranges. United States v. O'Meara, 895 F.2d 1216, 1220 (8th Cir. 1990). Furthermore, the Eighth Circuit has also held that the fact that a sentence is at the top of an applicable range does not make the sentence reviewable. United States v. Woodrum, 959 F.2d 100, 101 (8th Cir. 1992).

Ms. Hovden-Lee's Sixth Amendment challenge regarding her inability to confront the informant whose testimony was included in her PSIR and used to calculate her sentence is without merit because Sixth Amendment confrontation rights do not apply to post-trial proceedings, Ms. Hovden-Lee failed to raise any objections to the PSIR during sentencing, and her sentence is unreviewable.

For the reasons discussed above, **IT IS RECOMMENDED**, unless any party files objections[2] to the Report and Recommendation within ten (10) days of the date of this Report and Recommendation, that the movant's motion for relief under 28 U.S.C. § 2255 be denied.

June 10, 2005.

_____
JOHN A. JARVEY
Magistrate Judge
UNITED STATES DISTRICT COURT

---

[2] Any party who objects to this Report and Recommendation must serve and file specific, written objections within ten (10) court days from this date. A party objecting to the Report and Recommendation must arrange promptly for a transcription of all portions of the record that the district court judge will need to rule on the objections.